IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

FEBRUARY TERM, 1896.

---

ALETHA B. SLINGERLAND v. THE EAST JERSEY WATER
COMPANY.

1. A girl of eighteen was accustomed to help her father in the business
   of his farm; the father said he left her in charge of his farm on the
   day in question as he left for a few hours. *Held*, that the daughter
   was not thereby empowered to resist by force an entry upon a part of
   the farm that had legally been condemned for public use.
2. In making such resistance the daughter was a wrongdoer and must
   bear the consequences to herself legally resulting therefrom.
3. Excessive damages found by the verdict.

---

On rule to show cause.

Argued at November Term, 1895, before BEASLEY, CHIEF
JUSTICE, and Justices MAGIE and LUDLOW.

For the rule, *Coult & Howell.*

Contra, *Riker & Riker* and *Henry C. Pitney, Jr.*

411

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This verdict cannot stand.

The gravamen of the action was this : The father of the plaintiff, Aletha B. Slingerland, was the owner of a certain farm which it was necessary to use for the purpose of laying pipes to supply the city of Newark with water.    The city had contracted with the defendant, the East Jersey Water Company, to do this work as a part of the system that had been adopted, who sub-contracted with one Gillespie to do the work.    Inasmuch as the father of the plaintiff refused to sell the necessary right of way for the water-pipes, the city of Newark, in conformity to the statute, condemned a strip thirty-three feet in width over the lands in question, and after the sum assessed had been tendered and an injunction which had been obtained dissolved, the defendant notified Gillespie, the contractor, to enter upon the premises and proceed to lay the pipes.    The entry thus directed was admittedly, in all respects, legal.

The plaintiff had been in the habit of assisting her father in the business which was carried on by him upon his farm, and on the 24th day of December, 1891, when he left home in the morning, he said he left his farm in the care of his daughter, who was eighteen years of age, and who had no other authority to represent her parent than such as is to be inferred from the declaration just stated.

Soon after the father left on the morning of the day just designated, the sub-contractor, Gillespie, with his men, entered upon the tract which had been condemned, and marked out and superficially excavated a trench therein, and then, thus being in possession of the premises, began the introduction of the heavy water-pipes, the same being about twenty-four feet in length, laying them lengthwise along the excavation so made.

It was at this juncture that the plaintiff made her appearance, and she at once ordered the men to desist, and as they refused and continued their operations, telling her the injunction which her father had obtained had been dissolved, and

which was true, she put herself in front of the heavy pipe that the men were rolling into position. As she refused to make way she was removed, but immediately returned and resumed her former attitude. This procedure was repeated several times, on one occasion one of the pipes pressing upon her, but without doing her any injury. In the course of these removals, she made a merely formal resistance, not being bruised or hurt in any degree whatever. This ended the affair, and the jury have awarded her $5,000 for the wrong thus inflicted by the defendant. The damage alleged is that she sustained a nervous shock that has impaired her health, although a physician was not consulted until a year and four months after the occurrence.

To the verdict founded on this transaction there are three prominent objections.

*First.* The plaintiff, in her conduct on this occasion, was a pure and simple wrongdoer. She had no authority from her father to intervene in the affair. She was not his agent for that purpose, and he was not responsible for her acts. But even if she had been specially empowered by him to do what she did, it would have been of no avail, for this sub-contractor, having taken possession of the strip of land which had been condemned and paid for, had the right to defend that occupancy even against the landowner himself. Under the circumstances mentioned, if the proprietor of the farm had interposed his person so as to be an obstacle to the laying of the pipes, it is plain that he could have been lawfully pushed aside, by the use of all the force needful for that end. The rule of law upon this subject is not open, in this state, to any question.

Nor will the pretence set up at the trial, that the plaintiff, on at least one occasion, was pushed against by one of the water-pipes while she was standing on her father's land outside of the strip of thirty-three feet, be of any avail. The claim was that, in rolling some of the pipes, they extended on to the contiguous property, and one of the plaintiff's witnesses says that at one of the times in question the plaintiff was at

least two feet beyond the line of the condemned tract.   If this be so, she was still there committing a trespass, for her purpose and attempt were to prevent, by force, this contractor from the exercise of his legal right.   There is no testimony that even tends to show that she had been commissioned by her father to defend, by violence or by any other means, an intrusion, no matter how wrongful, into any part of his lands.

The result is that the court concludes that the contractor under the defendant was in lawful possession of the premises in dispute; that he had the right to use the necessary force to maintain such occupancy, and that the plaintiff herself was the wrongdoer in the occurrence forming the basis of the suit.

In the second place, admitting a cause of action, the defendant would not be the party to be implicated.   Gillespie was an independent contractor to do this work in behalf of the East Jersey Water Company.   It is true that Gillespie testified that there was a legal question between himself and the corporation whether his contract had not previously been completed, but it is entirely plain that, in laying the pipes at the time mentioned, he was acting under and in performance of his agreement.   Under such conditions of the case the defendant could not be held liable for the wrongdoings of the contractor in putting the water-pipes in place.   In such cases the principal is exempted from all responsibility if the act contracted to be done be legal.   This rule has always been enforced by the courts of this state, as will appear by reference to the case of *Cuff* v. *Newark, &c., Railroad Co.*, 6 *Vroom* 17, 22.

It is true that at the trial an effort was made to connect the company itself with the doing of the alleged tort.   But the theory had no basis either in law or fact.   The defendant informed the contractor that the injunction had been dissolved and that he could enter upon the premises.   This was true, and thus the defendant had performed its entire duty in this respect to its contractor.   The company was not bound to do anything more, and it had no concern with the methods which should be adopted by the contractor in entering into

possession of the land. And it is further obvious that even if it could be properly predicated that in going upon the property Gillespie acted in behalf and under the immediate order of the company, the root of the difficulty would not be reached, for it would be quite inadmissible to claim that thereby the defendant became a participator in the act of laying the pipes in place, which was plainly the function of the contractor as such.

The court has failed to see, in the facts as presented on this record, any solid ground for calling this defendant into court with respect to the matter at issue.

Lastly, the verdict is so excessive with respect to damages that it would be necessary to set it aside even if otherwise unobjectionable. The sum is $5,000, and for what mischief done by the defendant is this amount awarded? It is said that the plaintiff's nervous system was morbidly affected by the occurrences above narrated. But the question is, how much had the defendant (regarding Gillespie as its agent) contributed to produce this unfortunate result? What it had done was this: When the plaintiff had placed herself before the slowly-rolling pipes, to remove her from the danger, if any, so incurred. This was done considerately and kindly, and so far was this from disordering her nerves that on one occasion she laughed as she was led away. It appears absurd to insist that if the plaintiff received a nervous shock on the occasion in question, it was occasioned by the conduct of the contractor and his assistants. When a girl of eighteen entered upon the extravagant enterprise of placing her body as an obstacle in the way of over fifty laborers in the prosecution of their work, it is plain that she must have been wrought up to the highest point of nervous excitement, and if disease in that line ensued the cause is obvious. This principal factor in this branch of the case has been obviously overlooked by the jury.

Let the rule be made absolute.