### ALETHEA B. SLINGERLAND v. THOMAS A. GILLESPIE ET AL.

Submitted February 27, 1900—Decided June 11, 1900.

The plaintiff was left in charge of her father's farm, during his absence, with instructions "to look after the property while he was gone, and if anyone entered the premises, to ask them to show a written authority for their entry, and in case they did not have authority, to forbid them the premises in his name." Defendants lawfully entered upon a portion of the farm which had been condemned for public use, and their entry was forcibly resisted by the plaintiff. *Held*, that instructions from her father did not authorize such resistance by the plaintiff; that in making it she was a wrong-doer, and that therefore she must bear the consequences to herself which legally resulted from it.

On rule to show cause.

Before DEPUE, CHIEF JUSTICE, and Justices VAN SYCKEL and GUMMERE.

For the rule, *Joseph Coult.*

*Contra, Riker & Riker.*

The opinion of the court was delivered by

GUMMERE, J. The plaintiff is the daughter of one Andrew J. Slingerland, who owns a farm at Pompton Plains, through which the pipe line of the East Jersey Water Company now runs. When that pipe line was being constructed the company sought to obtain Slingerland's consent to lay it across his farm. Failing in this they caused proceedings to be instituted for the condemnation of a strip thirty-three feet wide and about six hundred feet long, as a right of way for their line. At the conclusion of those proceedings, and before the water company had entered upon the condemned strip, Slingerland obtained a restraining order from the Court of Chancery prohibiting them from taking possession thereof. After a hearing, and on the 24th day of December, 1891, the restraining order was vacated. Immediately upon the vacation of this order the amount of the award, made by the commission in condemnation proceedings, was tendered to Andrew Slingerland, who was present in Newark, in attendance upon the hearing of the motion to vacate the restraining order, and a telephone message was then sent to Gillespie, the defendant, who was the contractor in charge of the work of laying the pipe, advising him of the Chancellor's action. Gillespie had been for some time at Pompton Plains with a force of men, awaiting an opportunity to construct the line across the Slingerland farm, and on the morning of December 24th he took possession of the condemned strip and began the work of laying the pipe. Although it is disputed by the plaintiff, we think it clear, from the testimony, that he did not enter upon the condemned strip and begin work, until after the vacation of the restraining order, and the tender of the amount of the award to Slingerland.

Slingerland, when he went to Newark, had left his daughter, the plaintiff, in charge of the premises, with instructions "to look after the property while he was gone, and if anyone entered the premises, to ask them to show a written authority for their entry, and, *in case they did not have authority,* to forbid them the premises in his name." Apparently misunderstanding the scope of her authority, she endeavored to

prevent the laying of the pipe, not only by word, but by deed. She commanded the men not to lay the pipe, and on their refusal to obey her, she placed herself in front of one of the sections of pipe which they were rolling into position, and refused to move out of the way, although requested to do so. She was thereupon removed by the defendant and some of his employes, but on being released, immediately placed herself in front of the pipe again. This was done several times, although she was informed that the defendant had the legal right to lay the pipe, and intended to do so. No more force was used, at any time, in removing her from her position in front of the pipe, than was reasonably necessary for the purpose. On two occasions the pipe was rolled against her while she was standing in front of it, and before she was removed out of the way; and it is said by one of the witnesses for the plaintiff that this occurred while she was standing, not upon the right of way, but upon her father's land adjacent to it. It is not claimed that she was physically injured by coming in contact with the pipe, or in being removed from in front of it, the principal damage which it is said she sustained being the result of nervous shock, producing chronic hysteria, caused by the occurrences mentioned.

The trial resulted in a verdict of $2,500 in favor of the plaintiff.

This verdict cannot be supported, for the reasons stated by this court in the case of *Slingerland* v. *East Jersey Water Co.,* 29 *Vroom* 411, which was an action by the present plaintiff to recover damages from the water company for the same cause of action upon which this suit is founded. The fundamental facts in each case are necessarily the same, and the testimony in the present case discloses no new condition which would justify a modification of the decision of this court in the earlier case. In that case we stated that the plaintiff, in her conduct on the occasion in question, was a pure and simple wrongdoer; that she had no authority from her father to intervene in the affair; but that, even if she had been specially empowered by him to do what she did, it would have been of no avail, for the present defendant, having taken possession of

the strip of land which had been condemned, had the right to defend that occupancy against the landowner himself, or anyone representing him; and that, under the circumstances mentioned, if the proprietor of the farm had entered upon the strip and interposed his person so as to be an obstacle to the laying of the pipe, he could have been lawfully pushed aside by the use of all the force necessary for the procuring of that end.

We further held that the fact that the pipes were pushed against her, while she was standing on her father's land outside of the condemned strip, would not avail to support the verdict; the reason being that she was there committing a trespass, for her purpose and attempt were to prevent, by force, this defendant from the exercise of his legal right, and that there was no testimony that even tended to show that she had been commissioned by her father to defend, by violence, an intrusion, no matter how wrongful, into any part of his land.

The rule to show cause should be made absolute.