MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. T. E. GERREN.

Decided July 3, 1909.

**1.—Carrier of Passengers—Assault by Employee—Justification or Mitigation.**

The provocative conduct of a passenger will entirely excuse an assault by a railroad employee only when the conduct of the passenger is such as in law amounts to a justification for the assault on the ground of self-defense; when less than this, the provocation may be considered only in mitigation of damages.

**2.—Same—Provocation—Contributory Negligence.**

When the conduct of a passenger towards an employee is highly provoking, and consciously and knowingly proffered with the specific purpose of bringing about a difficulty, and which in its natural and probable sequence and results does bring about a difficulty, it constitutes such wrong on the passenger's part as requires the conduct to be regarded as contributory negligence, notwithstanding it may not quite amount to absolute justification for the assault.

**3.—Same—Evidence—Change.**

In a suit by a passenger against a railroad company for damages resulting from personal injuries inflicted by defendant's train auditor, evidence considered, and held to require the giving of a special charge submitting the provocative conduct of the plaintiff as contributive negligence.

Appeal from the District Court of Denton County. Tried below before Hon. Clem B. Potter.

*Garnett & Eldridge,* for appellant.—When the railway company selects and employs a very prudent auditor to discharge the duties which the railway company owes to its passengers, and a passenger enters the train and without any cause or excuse wilfully and wrongfully uses insulting language to and is guilty of such threatening conduct towards said employe as would have provoked a very prudent and peaceable man to resent such conduct and language by attacking him, and if said passenger knew that said language and conduct would provoke said employe to attack him, and said language and conduct on the part of said passenger to and towards said employe was used by said passenger wilfully and wrongfully, with the intent and purpose upon his part to provoke said employe to attack him, and in consequence of said language and conduct said employe does attack the

passenger, such passenger by reason of his own wrong is precluded from recovering damages of such employe's principal, hence the court erred in refusing to give to the jury special charge No. 4 requested by defendant. Railway v. Jopes, 142 U. S., 18; Cincinnati, H. & D. Ry. v. Cole, 29 Ohio St., 126; St. Louis & S. F. Ry. v. Trimble, 15 S. W., 899; Peavy v. Georgia Railway & Banking Co., 81 Ga., 485, 8 S. E., 70; Harrison v. Fink, 42 Fed., 792-3; 4 Elliott on R. R., p. 2583.

*Joe S. Gambell* and *Emory C. Smith,* for appellee.—The trial court did not err in refusing to give, as part of the law of the case, the requested charge No. 4, because railway companies in the transportation of passengers are by law required to use a high degree of care for their protection, and in this suit the auditor, Fulkerson, was the agent and representative of appellant at the time he assaulted appellee, and any insulting language which appellee may have used to and in the presence of said auditor prior to or at the time he inflicted the injuries upon appellee would not in law justify the assault, and the same would not avail the appellant as a defense against the appellee's action for damages. Dillingham v. Russell, 73 Texas, 47; Galveston, H. & S. A. Ry. Co. v. La Prelle, 65 S. W., 488; St. Louis S. W. Ry. Co. of Texas v. Johnson, 68 S. W., 59.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit to recover damages caused by an assault upon him December 8, 1907, while a passenger on one of appellant's passenger trains between Denton and Dallas by one J. H. Fulkerson, appellant's train auditor, with a ticket punch, causing serious cuts, wounds and bruises on appellee's head, on account of which he was rendered unconscious and confined to his bed for several days. Appellant, among other things, pleaded that the assault was committed by the auditor in his necessary self-defense, and further, that appellee was guilty of contributory negligence in provoking the assault and in bringing it upon himself. The trial before a jury resulted in a verdict and judgment for appellee in the sum of one thousand dollars, from which this appeal has been prosecuted.

Error is assigned to the court's action in refusing the following special instruction: "If you find from the evidence that T. E. Gerren was a man of large experience in dealing with his fellowmen, and if you find that plaintiff Gerren at the time of the alleged assault upon him used insulting language, and was guilty of such conduct towards and to the auditor, Fulkerson, of such character as would have provoked a very prudent and peaceable man to resent such conduct and language by attacking him, the said Gerren; and if you further find from the evidence that said Gerren did use insulting language and was guilty of such conduct towards and to said auditor; and if you further find that said Gerren knew that such language and conduct would provoke said auditor to attack him; and if you further find from the evidence that said Gerren used such language and conduct towards and to said auditor wilfully and wrongfully, with intent and for the purpose of inducing said auditor to attack or assault him, and that in consequence of such language and conduct said auditor did assault and attack said Gerren, then I charge you to find for the defendant."

The evidence very plainly raised the issue of self-defense, and the auditor testified that he struck appellee because he was apprehensive of danger, and supposed that appellee was trying to draw a pistol or knife, but the issue of self-defense was submitted to the jury and determined in appellee's favor. The court also authorized the jury to consider appellee's conduct in mitigation of the damages. So that the very serious question before us is whether appellant was entitled to the further instruction above quoted.

We will not quote the testimony entire because of the profanity detailed, but we think it undoubtedly raised the issue presented in the special charge. There was evidence tending to show that for many years the auditor, Fulkerson, had maintained the general reputation of a quiet, peaceable and inoffensive man; witnesses testified that they had known appellee Gerren from thirty-five to thirty-eight years, and declared that his reputation is that of a violent and dangerous man; there was evidence also to the effect that on a former occasion Gerren took offense because Fulkerson directed him to leave the ladies' coach and go into the smoker while smoking a "vile pipe," Fulkerson testifying that Gerren on this occasion so manifested his resentment as to induce an unsuccessful effort at a passing station to call an officer in protection of the passengers. There was other evidence to the effect that on the occasion in question appellee boarded the train at Denton, and while standing on the platform remarked to a passenger, referring to the auditor and in his hearing, "That is the same damn man I had trouble with before;" that the auditor made no reply, but entered the car; that appellee followed, "cussing and abusing" the auditor, saying among other things: "——— ———, you tried to run it over me before, and I had some one with me" (his daughter), and "——— you," or "by —+—, you can't run it over me this time, and I am by myself;" that the auditor still made no reply, but proceeded through the coach (appellee following and remarking, "I don't want any such damn cattle as you running over me") and on out through the door, closing and locking it in appellee's face, appellee following to the door; that later the auditor returned to the car where appellee was to collect fares, as required by his duties, and approached appellee and said, "Ticket, please, sir;" that appellee looked up and said in a coarse, gruff, sarcastic manner, "I have got no ticket;" that the auditor replied, "The fare is $1.10;" that after fumbling in his pocket some time appellee finally got his purse out and paid the fare, saying as he did so something about overcharging him (one of the witnesses testified that the declaration was that the auditor had charged him "ten cents too much"); that when appellee paid his fare the auditor gave him a receipt, which appellee "wadded up" and threw on the floor, jumped up and said, "I wish ——— ——— you had tried to charge me four cents a mile; I would like to maul you," the auditor replying, "Keep your seat, I won't bother you," to which appellee responded, "No, ——— ———, you won't bother me; you are afraid of me, you are; ——— you, I'll put you out of this car," and following the auditor down the aisle, took hold of his shoulder, fumbling in his pocket with the other hand, whereupon the auditor turned, and it thereafter took several of the other trainmen to take the auditor off of appellee.

Many authorities might be cited in support of the salutary rule that it is the duty of a common carrier to exercise a very high degree of care to protect its passengers from misconduct, assaults or injury by its servants or other persons, and the extent to which our own courts have given consideration to the question of the passenger's provocative conduct when assaulted by a railway employe is to entirely excuse the assault only when the conduct of the passenger is such as in law amounts to a justification for the assault on the ground of self-defense, but where less than this, to admit the evidence of the passenger's provocation in mitigation of damages only. See Galveston, H. & S. A. Ry. Co. v. La Prelle, 27 Texas Civ. App., 496; St. Louis S. W Ry. Co. of Texas v. Johnson, 29 Texas Civ. App., 184. But it seems to us that the facts of this case go beyond those in the cases cited, and that if in a given case the passenger's conduct toward the assaulting employe is highly provoking, and consciously and knowingly proffered with the specific purpose of bringing about a difficulty, and which in its natural and probable sequence and results does bring about a difficulty, it constitutes such wrong on the passenger's part as requires the classification of such conduct as contributory negligence, notwithstanding it may not quite amount to absolute justification for the assault which follows. And this view has support in high authority. In the case of Peavy v. Georgia R. & B. Co., 8 S. E., 70, the Supreme Court of Georgia, in speaking of an appellant whom the railway's conductor had shot under circumstances not held to be justified, say: "The conductor would not have been brought into a state of excitement from danger and insult which unfitted him for discharging his proper duties either to the company or to the passenger. Whether the conductor was more or less in fault than the plaintiff was in the shooting, certainly the plaintiff was more at fault than the company, because the plaintiff was there upon the ground, stirring up excitement, and bringing on danger both to the conductor and himself. He unfitted the conductor for exercising the care and prudence that were essential to guarding the interest of the company and essential to performing in a proper manner his duty to the company or to the plaintiff. The plaintiff spoiled the instrument, and then sued the manager because the performer did not make good music. It was the plaintiff's fault that the conductor was out of tune; and, though the conductor might not be altogether excusable for the shooting (according to his own evidence, however, he was excusable), the company was in no fault for it, and it would be unjust for the plaintiff to recover of the company when he boarded its train, violating the law (as we can well infer) by carrying upon his person a concealed weapon, violating the law again by swearing and using obscene language, violating the law again by committing an assault upon the conductor with a pistol, drawing the pistol and presenting it at him, and violating the law by general disorder and misconduct throughout the transaction up to the moment he was shot. We think the court below was well warranted in granting the second new trial. While a second verdict is a sacred thing, it is less sacred than the law and the substantial justice of the case. These required that another new trial should be granted."

Our penal statutes forbid cursing and swearing and disorderly con-

duct in a public place which are calculated to disturb persons there assembled, and while it is the duty of the carrier to exercise the highest degree of care in the protection of passengers that would be exercised by a very careful and prudent person under like circumstances, human nature has its limitations, patience sometimes ceases to be a virtue, and the passenger himself rests under the duty of decently demeaning himself on a train crowded with persons of all ages, sex, and condition of nerves. The truth is, and ought to be in the protection of the traveling public, that the passenger should not forget the laws of the land or the rights of other passengers, and, speaking in illustration of the thought in mind merely, and without reference to the present appellee, when the agile and belligerent individual designated in the expressive vernacular of the West as "Wild and Woolly,"—"the bad man from Bitter Creek"—gets on a loaded train, thirsting for gore, and with coarse oaths hunts for a fight—a strenuous time—the rewarding ear of the court should not be attuned to his complaint however vociferous, if it happens that he gets just a little more than he expects of that for which he was looking. This view is, of course, in conflict with appellee's suggestion that in no event can appellant be excused, because the auditor used more force than was necessary. The question, however, is not alone whether the auditor committed a wrong, nor is the question one of comparative degree in wrongful acts, for the doctrine of comparative degrees of negligence has been rejected in this State. But the question is, as in all cases where the doctrine of contributory negligence is applied, did appellee do wrong, and does such wrong constitute negligence which proximately contributed to the result of which he complains? If so, he is not entitled to recover, notwithstanding the wrong or negligence of his adversary, and notwithstanding his fault be less in degree. It may be that appellee was not guilty of the negligence imputed to him in the special charge, but it was for the jury and not the court to say. We therefore conclude that the court erred, as assigned, in refusing the special instruction. Judgment reversed and cause remanded.

*Reversed and remanded.*

Writ of error refused to appellee.