ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. HUDDLESTON. (No. 1487.)†

(Court of Civil Appeals of Texas. Texarkana. July 1, 1915. On Rehearing, July 3, 1915.)

1. ASSAULT AND BATTERY ⬤⟶13—SELF-DEFENSE—CIVIL CASES.

The law of self-defense and the stage of the difficulty at which self-defense ceases are the same in civil cases as in criminal prosecutions, except as to the degree of proof.

[Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 11; Dec. Dig. ⬤⟶13.]

2. TRIAL ⬤⟶296—ABSTRACT AND CONCRETE INSTRUCTIONS.

That an instruction merely defines self-defense is not ground of complaint; another instruction having correctly applied the law to the issue of self-defense as a justification of the act of defendant's brakeman.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. ⬤⟶ 296.]

3. CARRIERS ⬤⟶283—ASSAULT ON PASSENGER.

A carrier is liable for intentional assault on a passenger by a brakeman not justified or excused by the circumstances.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1119–1124, 1140, 1141; Dec. Dig. ⬤⟶283.]

4. CARRIERS ⬤⟶321—ASSAULT ON PASSENGER —SELF-DEFENSE—INSTRUCTIONS.

There being evidence, in a passenger's action for assault and battery by defendant carrier's brakeman, that, though the passenger struck the first blow, the brakeman was then within striking distance, attempting to make an assault on him with a dangerous weapon, an instruction requiring the finding, as a condition to a perfect right of self-defense by the brakeman, that, when he assaulted plaintiff, plaintiff was making an assault on him, which had

---

not been provoked by his wrongful conduct, was proper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. ☞321.]

5. CARRIERS ☞320—ASSAULT ON PASSENGER —SELF-DEFENSE—QUESTION FOR JURY.

Whether defendant carrier's brakeman, claimed to have assaulted a passenger in self-defense, used no more force than was reasonable, under the circumstances, is a question for the jury on conflicting evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. ☞320.]

On Rehearing.

6. TRIAL ☞260—INSTRUCTIONS COVERED BY OTHERS.

Defendant's refused requested instruction as to recovery of damages, the direct result of plaintiff's wrongful and negligent conduct, *held*, under the evidence, sufficiently covered by its requested instruction given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

Appeal from District Court, Bowie County; W. T. Armistead, Judge.

Action by J. F. Huddleston against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

This is an action by appellee, a passenger, against appellant company, for damages resulting, as alleged, from insulting and abusive language and an assault and battery upon Him by appellant's passenger brakeman. The defendant as a defense, pleaded that the plaintiff by his own negligence and insulting language and wrongful and violent conduct to the brakeman brought about and provoked the assault proximately causing the injury, and also that the brakeman, under the circumstances, acted in self-defense. The verdict of the jury was in favor of plaintiff.

Appellee was a passenger for appellant's outbound passenger train, and the brakeman on the train was on duty at the time near the platform or steps of the coach, assisting passengers to the coach and examining their tickets. The evidence is undisputed that appellee was intentionally struck upon the head, jaw, and shoulders by the brakeman with an officer's "billy" held around his wrist with a strap, which is described as being of walnut or black locust wood, between six and eight inches long, the handle leather covered and the outer end leaded. There is a wide difference, however, between the parties as to the occurrences at the time of and just preceding the commission of the assault. Each party, under the evidence, claims that the other was the aggressor, and that the assault which led to the conflict was by him. According to the evidence in appellee's behalf, the ultimate facts appear that appellee, his son, M. F. Chestnut and son, and T. A. Brewer constituted a fishing party en route to Spirit Lake, a station on appellant's road.

The party came to the depot at Texarkana about 7 o'clock a. m., and the train was about ready to depart. Mr. Brewer and the two boys, with the luggage, went directly to the train, and appellee, and Mr. Chestnut went into the ticket office to buy the tickets for the party. The brakeman at the platform of the coach refused permission to Brewer and the two boys to enter the coach without tickets, as required by the rules of the company. Brewer then stood near the steps of the coach, stating to the brakeman that two of the party would be there in a moment with the tickets. After purchasing the tickets, appellee and Chestnut came to the coach. As appellee was approaching the coach, and near to it, he said to Brewer, "Why haven't you fellows got on with the baggage?" and Brewer answered, "Hurry up for God's sake, with the tickets, so we can get on." Brewer then attempted to get upon the first step of the coach, and the brakeman abruptly pushed him back and said, "By God, you can't get on until you show your tickets!" Appellee at the moment said, "That is no way to treat a white man;" and the brakeman, turning, said: "What the hell have you got to do with it? That's my business." Appellee replied, "Nobody is going to beat their way on the train." The brakeman answered, "That is my business, to see that you don't get on; and you need not get so damn gay about it." Appellee replied, "There is nobody getting gay, and you need not be so smart, either." Mr. Chestnut then handed the tickets for all the party to the brakeman, who looked at them and handed them back to Mr. Chestnut; and, then pointing his finger at appellee, said, "By God, you shall not get on at all." Appellee replied, "Watch me and see me get on," and proceeded to go upon the steps of the car, a minnow bucket in one hand and fishing rods in a case in the other hand. Immediately as the appellee mounted the first step, the brakeman, standing slightly to the left or east of the first step, took hold of the rail on the coach with his left hand, and in an angry mood reached his right hand to his hip pocket and began to pull therefrom an officer's "billy." Mr. Brewer, standing by the brakeman's right side at the time, believing it was a pistol, grabbed the right hand of the brakeman and attempted to prevent his drawing the billy, and at the same time hollered to appellee, "Look out, Jim, he is going to shoot you." Appellee at once turned his head around; and seeing the brakeman actually drawing something from his hip pocket, and the effort of Brewer to prevent it, immediately dropped the luggage in his hands, turning kicked the brakeman in the mouth, and then quickly jumped into the arms of the brakeman, as he said, "for the purpose of keeping the brakeman from shooting." The brakeman then forcibly struck appellee a number of times over the head, jaw, and shoulders with the "billy." Appellee, during the time

he was being struck, resisted the attack and finally grabbed the brakeman's throat with his hand, when, by this time, sufficient bystanders interfered and stopped the affray. Appellee had no weapon at all. The proof shows that the brakeman was over 6 feet tall, weighed 175 pounds, and was a powerful man. Appellee was a much smaller man. The brakeman testified as follows:

"When Mr. Brewer came up I stopped him and asked him for his tickets, and he said a man was coming with them; and presently Mr. Chestnut and Mr. Huddleston came up together and showed me the tickets. The first thing was, Mr. Brewer said, 'For God's sake, show this son of a bitch the tickets before he has a fit,' or something like that. I told him I was there to inspect tickets and had to see them before he got on the train. Mr. Huddleston walked up and said, 'You think you are a damn smart son of a bitch.' I had not said a word to him, and had not asked him for his ticket. I said, 'No, I ain't a smart son of a bitch, but I am working for a living, and I was going to see his ticket before he got on the train.' Then he said, 'Damn you, I am going up; do you see me?' And he got up on the step. Mr. Chestnut showed me the tickets after Mr. Huddleston got up on the step, and I said, 'I have seen the tickets, and he could go on in and sit down.' Then he (Huddleston) wheeled around on the steps and kicked me in the mouth. It cut my lip clear through and knocked two teeth loose. My lip bled a whole lot. I reached for him when he kicked me, and I made the remark, 'Here is where I clean you;' then we engaged in a fight. I did not pull my billy before he kicked me in the mouth, and made no effort to pull it, and had no idea of pulling it. * * * I had never seen Mr. Brewer prior to the time he came up there, and had never seen Mr. Chestnut and Mr. Huddleston, and there was not a bit of feeling between us before that time. They were perfect strangers to me."

The jury settled the conflicting evidence as to the aggressor in favor of appellee. And, in view of the conflict respecting the occurrence of the assault, this court would have to take the verdict of the jury. The verdict comprehends the finding of fact, which is here adopted, that the brakeman, without justification and wrongfully, assaulted and committed a battery upon appellee, inflicting injury upon him while a passenger. The evidence fairly warrants the amount of the verdict.

Glass, Estes, King & Burford and C. A. Wheeler, all of Texarkana, for appellant. Mahaffey & Thomas, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] In exoneration of any liability for the brakeman's act, the appellant claimed, both in its answer and proof, that whatever injury appellee sustained was inflicted by the brakeman in the legal and reasonable defense of his own person from an attack made by appellee on him. And the court's charge in the third paragraph defined, and in the fourth paragraph applied to the facts of the case, self-defense, in justification of the brakeman. As both the second and third assignments of error complain of this portion of the charge, they may be here considered

together. It is first objected that a mere abstract statement relating to the law of self-defense, as applied in criminal cases, is improper and prejudicial. The law of self-defense and the stage of the difficulty at which self-defense ceases are the same in civil cases as in criminal prosecutions, with the exception that the strict rule of evidence applicable to the degree of proof in a criminal prosecution, which must exclude reasonable doubt, is not extended to civil actions. March v. Walker, 48 Tex. 372. It is not thought that a reversal of the judgment is warranted upon the ground that the instruction was but a definition, if the court, in applying the law to the issue of self-defense as a justification of the act of the brakeman, did so correctly. The instruction is as follows:

"Now, if you find from the evidence that the defendant's said brakeman, did, at the time and place alleged by the plaintiff, make an assault on the person of plaintiff, but further find from the evidence that, at the time such brakeman did so, the plaintiff was making or was about to make an assault upon the said brakeman, which had not been provoked by the wrongful conduct, if any, of said brakeman, and which, viewed from the standpoint of such brakeman and no other, reasonably caused him to believe he was in danger of suffering death or bodily injury at the hands of the plaintiff, and the brakeman made the assault, if any, upon the plaintiff for the purpose of defending himself from what reasonably appeared to him to be danger of death or bodily injury at the hands of the plaintiff, and such brakeman used no more force than to him at the time appeared reasonably necessary to his defense, then and in the event you so find you will return a verdict for the defendant."

The giving of the instruction is objected to by appellant upon the grounds: (1) That the liability for assaults on passengers is based on negligence; and (2) that it limited the right of defense by the brakeman to (a) an assault or threatened assault by appellee "which had not been provoked by the wrongful conduct, if any, of said brakeman," and (b) the use "of no more force than to him at the time appeared reasonably necessary to his defense"; and (3) the undisputed evidence shows such misconduct and violent conduct of the passenger as to preclude his recovery.

[3] First, in this case it is not contended that the battery of the brakeman was not intentional, but a mere casualty. In that case, if the battery was not intentional and purposed, the defendant therein is guilty of no wrong, save his negligence, and the plaintiff could not recover at all without showing a want of ordinary care on the part of the defendant. The difference between such case and the instant one is substantial and vital. Here the brakeman intentionally and purposely perpetrated the battery. If intentionally done, it was not negligently done. And, in cases where the injury is caused by intentional violence inflicted upon the person, the plaintiff's right of recovery would be measured by the rule of whether or not his assailant was justified or excused by all the

circumstances in committing the act. Croft v. Smith, 51 S. W. 1089. A corporation is liable for an assault and battery when its agent in committing it was performing some act within the limits of his authority, but without justification or excuse, or with excessive force. 1 Cooley on Torts (3d Ed.) 202; Dillingham v. Anthony, 73 Tex. 47, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753.

[4, 5] And next, measuring the right of the brakeman to self-protection as a justification, the court left to the jury to find whether or not the assault of the appellee, which the brakeman was claiming to resist, had been "provoked by the wrongful conduct, if any, of the said brakeman." The instruction in legal effect is that a plea of self-defense cannot be sustained where the defendant was the aggressor and provoked the encounter in which the battery was committed. At the trial it appeared that the appellee struck the first blow. But it was claimed by appellee that the brakeman was the aggressor, and that his assault, which led to the conflict, was in consequence of an attack being made upon him by the brakeman. And there is evidence going to sustain appellee's contention that the brakeman was actually attempting to make an assault upon him with a dangerous weapon, and within striking distance, when he kicked him to prevent the attack. In such evidence the issue was in the case of menace by overt act on the part of the brakeman, and therefore the court did not err in requiring the jury to find, in order to a perfect right of self-defense, that the brakeman was free from wrong in occasioning or producing the necessity which required his action. And neither did the court err, it is thought, in leaving to the jury to find whether or not the force used was reasonable. Whether or not the force used was reasonable is a question of fact to be determined from the evidence by the force used at the time and the circumstances of the occasion and the nature of the act done. The issue, we think, was made by the circumstances. And it is not thought that the evidence was so far one way as to warrant the ruling, as a matter of law, that the misconduct or violent conduct of the appellee was so far a wrongful act as to preclude a recovery.

We have considered the remaining assignments, and think they should be overruled. The issues made by the evidence were correctly submitted in the court's charge and the special charges given at the request of the appellant.

The judgment is affirmed.

### On Rehearing.

[6] A ground, among others, set up for reconsideration by this court, is the refusal of the trial court to give the following instruction:

"You are instructed that the plaintiff cannot recover damages that are the direct result of his own wrongful and negligent conduct. In this case, if you find from the testimony that the difficulty between the plaintiff and the brakeman was occasioned by wrongful conduct on the part of the plaintiff (that is to say, if the difficulty was provoked by the plaintiff and the damages sustained by him were the direct consequences and result of such provocation), then the plaintiff cannot recover, and your verdict, in such event, should be for the defendant."

The point made now, as in original consideration, in respect to the refused instruction, is in line with the case of Railway Co. v. Gerren, 57 Tex. Civ. App. 34, 121 S. W. 905, that, if the plaintiff provoked the difficulty and brought about the rencounter, the company would not be responsible. It is thought, though, as before considered, that the following special charge requested by appellant and given to the jury by the court sufficiently, under the evidence, covered the idea of such refused charge, viz.:

"If from the testimony you believe that, after the plaintiff had gotten to the platform of the coach and had passed the brakeman Knox, he (the plaintiff) turned, without provocation at that time, and addressed to said Knox a vile and insulting epithet and kicked him in the mouth, and that not until he was so kicked did the said Knox strike or offer to strike the plaintiff, and that a difficulty followed in consequence of the plaintiff's kicking Knox under the circumstances and in consequence of an effort on the part of Knox to prevent the plaintiff from kicking him again or striking him, then the plaintiff cannot recover in this case for the damages, either physical or mental, he sustained in consequence of the said difficulty."

It is believed that the motion should, in all things, be overruled.