### GEORGE WHITTEN v. THE STATE.

*No. 7176.   Decided May 24.*

**Justifiable Homicide—Homicide in Prevention of Theft at Night.**—In this State homicide is justifiable when committed for the purpose of preventing theft at night, if the homicide was committed while the deceased was at the place of the theft, or within the reach of gunshot of such place. It makes no difference that the deceased, at the time he was killed, had abandoned the stolen property and was fleeing from the place of the theft, if he was killed while within reach of gunshot of the place of the theft. In such case the homicide is justifiable under the statute of this State, though not at common law.

APPEAL from the District Court of San Augustine. Tried below before Drury Field, Esq., Special Judge.

This conviction is for murder in the second degree, the punishment being five years confinement in the penitentiary. The name of deceased was Frank Giveson, alias Frank Gipson. The opinion states the case as to the facts sufficiently. There are no bills of exception in the record to the charge of the court, nor to the refusal of the court to give the special instruction requested by the defendant.

No brief for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State, contended that the charge of the court was sufficient and correct; that the special charge requested by the defendant was properly refused because it did not correctly and fully state the law applicable to the phase of the case attempted to be covered thereby; that as no exceptions to the charge, or to the refusal to give the requested special charge, were made and reserved by the defendant, there is no reversible error, if error at all, as no injury to the defendant's rights is shown. Willson's Crim. Stats., sec. 977; Weaver v. The State, 19 Texas Ct. App., 547.

WHITE, PRESIDING JUDGE.—Appellant was convicted in the court below of murder in the second degree. In his testimony given at the trial he admits that he shot the deceased, Gipson, on Wednesday night, December 10, 1890. He had only known the deceased from the Sunday morning previous, at which time he had hired him to assist him

in gathering his crop. Deceased appeared to be a tramp, and was a stranger in that neighborhood. He had no effects of any kind except the clothes he had on, which were dirty and ragged. After the appellant had hired him, deceased, by his conversation with one or two parties, created the suspicion that he was a bad character, and perhaps a horse thief, and his acts and conduct, especially on the Wednesday before the shooting, were of such a suspicious character as induced several parties to believe that he intended to steal a horse or horses that night, and they made an arrangement among themselves that they would guard their horses and also the different roads leading out of the neighborhood. Appellant's mare was in a small lot about twenty-eight by thirty feet square, at the residence of his brother, John Whitten. He determined that he would go down and watch the lot in order to prevent the deceased from stealing her. He says he took a position under a tree not very far from the gate of the lot, fifteen or twenty steps off, and after waiting there about an hour he saw some one in the lot leading the mare toward the gate. "I called to him and asked him who he was. He made no reply. I then waited until he opened the gate, and led the mare outside of the gate and was in front of the mare, leading her, when I again called out, 'hold up.' This man then seemed to pull or slip the halter or rein off the mare and turned her loose, and then turned on me and said: 'Stand back, G—d damn you.' He came toward me, and just before I shot raised up his right hand. I could not tell if he had anything in it. I shot five times as rapidly as I could shoot with a double action pistol. I think I hit him the first time I shot. When I shot him he was coming toward me. It was a clear starlight night."

John Whitten, a brother of the defendant, testified to about the same facts in regard to the shooting, he occupying a position not far from the lot, and looking at the parties at the time.

Several parties came to where the deceased was lying upon the ground in the course of an hour or two after he was shot. They found a black rawhide halter lying near his hand, which was so constructed that it could be used as a bridle. They also found a spur in one of his pockets. They also found footprints of a horse that had evidently wheeled and run from that immediate spot in the direction defendant and his brother said the mare ran when he commenced shooting. They also found two stones about the size of a man's fist close to where the deceased lay, and there were no other rocks or stones in the immediate neighborhood of the spot.

The deceased died about 2:35 that night, and was insensible from the time they came to him up to the time of his death.

These are succinctly the facts necessary to be understood in order to illustrate the only question necessary to be discussed in the decision of this case on the appeal.

The court instructed the jury in the application of the law to the facts that: "If at the time the fatal shot or shots were fired the deceased was in the act of stealing the horse that was in the possession of the defendant, etc., and defendant shot deceased with a pistol and killed him, to prevent the consummation of the theft of the horse, and the theft and the killing took place in the night time, you will acquit the defendant, unless you believe from the evidence that at the time the homicide took place the deceased had abandoned his intention to commit theft of defendant's horse, and was fleeing or going from the place of the attempted theft, and while so fleeing or going from the place was shot and killed by defendant; then in case you so find, defendant would not be justified in killing the deceased on account of the attempted theft of his property."

Defendant's counsel asked a special requested instruction to the following effect, to-wit: "If it reasonably appeared by the acts or words coupled with the acts that it was his desire, purpose, and intent to steal the horse of said Whitten, and that such killing took place while the said Gipson was in the act of committing said theft in the night time, or while the said Gipson was still at the place where said theft had been committed or within reach of gunshot from such place, then you will find the defendant not guilty."

The court refused this instruction, stating that it had already been given in the general charge. We do not so construe the general charge as it appears in the record. In its application to the facts it did not permit the jury to acquit the defendant provided the deceased was within range of gunshot from the place of the theft of the animal, and expressly told the jury the defendant would not be justified if deceased had abandoned the attempt and was fleeing from the place of the theft at the time he was shot. The question, and the only question, is as to whether the special requested instruction of the defendant was the law and whether it should have been given in the charge to the jury. Under our statute, homicide is permitted by law when inflicted for the purpose of preventing certain offenses therein enumerated, and among these theft at night, provided the killing takes place under the circumstances enumerated in the statute, among which is the following: "It must take place before the offense by the party killed is actually completed, except that in case of rape the ravisher may be killed at any time before he has escaped from the presence of his victim, and except also in the cases hereafter enumerated." Then follows the enumeration of the exceptions to the rule that the killing must take place before the offense has been actually completed, among which exceptions we find in paragraph 8 of article 570, Penal Code, the following provision, to-wit: "In case of burglary and theft by night the homicide is justifiable at any time while the offender is in the building or at the place where the theft is committed, or is within reach of gunshot from such place or building."

Thus it will be seen that in cases of burglary and theft by night our statute makes an express exception to the general rule, which is that the killing must take place while the person killed was in the act of committing the offense and before the same was actually completed. This statute of ours, in so far as this and other enumerated exceptions are concerned, is an invasion upon the rule of the common law, and is, so far as we know, *sui generis.* The law permits a homicide when inflicted for the purpose of preventing theft at night, and the homicide in such case is justifiable at any time while the offender is at the place where the theft is committed, or within reach of gunshot from such place. Laws v. The State, 26 Texas Ct. App., 643.

Under our law it makes no difference whether the party has abandoned the property and is fleeing from the place of the theft; if he be shot while he is still within reach of gunshot from that place the homicide is justifiable. It seems to us plain that our statute admits no other construction. We are therefore of the opinion that the charge of the court was erroneous, and the special requested instruction of the defendant should have been given as the law of the case.

Because the charge of the court as given was erroneous, and because the court erred in refusing to give the special requested instruction of the defendant, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[The transcript in this case was filed at Galveston, March 25, 1891, and transferred to Austin, where it was decided. It is cause No. 3135 on the Galveston docket.]