ALETHA B. SLINGERLAND, PLAINTIFF IN ERROR, v. THOMAS A. GILLESPIE ET AL., DEFENDANTS IN ERROR.

Argued March 10, 1904—Decided November 14, 1904.

One may resist another, trespassing upon his lands, whatever the motive for so resisting may be. It is not the design of the resister but the act of the trespasser which is wrongful.

On error to the Supreme Court. Upon a judgment on a verdict in a cause tried at the Morris Circuit, before Justice Garretson and a jury.

For the plaintiff in error, *Riker & Riker*.

For the defendants in error, *Coult, Howell & Ten Eyck*.

The opinion of the court was delivered by

FORT, J. This is an action to recover damages for an alleged injury to the plaintiff on the 24th of July, 1891.

The city of Newark entered into a contract with the East Jersey Water Company in 1889, under which the company became bound to procure water rights and to construct water works for the furnishing of a new water-supply to said city, and it was provided in said contract that whenever it became necessary to condemn lands the city's right to do so was to be exercised for that purpose.

The East Jersey Water Company subsequently contracted with the defendants in this case to construct the pipe line required by said contract with said city. The pipe line ran from Macopin intake, on the Pequannock river, to the reservoir in the city of Newark, in Essex county, a distance of some twenty-five miles. Along said right of way for said pipes, about six hundred feet of the same, was land belonging to Andrew J. Slingerland, being farm land, near Pomp-

ton Plains, county of Morris. Across this land a strip thirty-three wide by six hundred feet in length was condemned. Litigation arose over the condemnation proceedings, and before payment or tender of the award an injunction was obtained in the Court of Chancery preventing the defendants from entering upon the Slingerland land. Slingerland had taken all means within his power to resist the entry of the defendants upon his property, and on the 24th day of December, 1891, there was a hearing before the Chancellor, at Jersey City, upon a motion to vacate the injunction. Upon said date, at about ten o'clock in the morning, the injunction was vacated by the Chancellor, and the fact of such vacation telephoned to the defendants at the right of way. Andrew Slingerland, the owner of the property and the father of the plaintiff, had gone to Jersey City on that date, to be present at the hearing upon said motion, and attended in Jersey City at the time it was decided. He left his daughter, the plaintiff in this case, in charge of his property, with directions that she should protect his land and resist any attempts to enter upon it, either upon the right of way or otherwise, except by persons who should show to her the proper authority to do so. After he left home, and either before or after the hour of the vacation of the injunction—which was controverted in the proof—the plaintiff in this case claims to have been injured by the defendants personally, or through their agents and servants rolling large pipes against her. The injury is claimed to be serious, and for this injury this suit is brought.

This is the first time this cause has been in this court, but it has been in the Supreme Court, in its various phases, at least three times. *Slingerland* v. *East Jersey Water Co.,* 29 *Vroom* 411; *Slingerland* v. *Gillespie et al.,* 36 *Id.* 92; *Slingerland* v. *Gillespie,* 38 *Id.* 385.

Several exceptions were taken to the rulings of the trial justice, all of which have been brought here; but, with a single exception, we think they are all without substance.

One of the contentions of the plaintiff was that she was

directed by her father, who owned the farm through which the right of way in question ran, to protect his land, including the right of way, from entry thereon by the defendants or others, unless they showed some right to so enter.

At the time her father gave her this order an injunction or restraining order of the Court of Chancery was in force prohibiting the defendants, or those they represented or who represented them, from entering upon or taking possession of the right of way in question. The injunction gave the owner of the property the right to exclude all persons therefrom until it was vacated. To exclude persons from his own land, not within the right of way, and to empower his daughter to do so, was within his right, irrespective of the injunction. Anyone injuring him or those whom he had authorized thus to protect his property would be liable, at least, for nominal damages for such unlawful acts.

In his charge to the jury the trial judge said: "Now, as to the question of being beyond the thirty-three-feet strip. If you conclude that the instruction of the father was with regard to this thirty-three-feet strip, and that that was what he intended when he gave the instruction, and that there was no instruction as to the rest of the farm, that was not an instruction to use force to keep anybody off the part outside of that strip. If she had instructions from her father to use force to protect his land, and those instructions were with reference to the thirty-three-feet strip, and her action in carrying out those instructions was in reference to that strip, although they were carried out on the adjoining land, she cannot recover. If her action on the adjoining land was part of the design on her part to prevent the pipes from being put on the thirty-three-feet strip and without intention to protect the land outside of the thirty-three-feet strip, she cannot recover, unless there was excessive force. If her action outside of the thirty-three-feet strip was simply to protect the land outside of that, without any reference to that strip, and that was all she intended to do, and she was taken hold of and the pipes rolled on her, she would have a right

to recover for whatever injury was done to her by that act; but if her action there was with the intention of preventing the pipes being rolled on the thirty-three-feet strip, she cannot recover unless there was excessive force used."

This charge appears to be in conformity with some of the decisions of the Supreme Court in the cases above cited. But with the law as thus stated, under the facts proven in this case, we are unable to agree.

The plaintiff in this case, we think, was justified under her authority to resist the defendants or their servants in any attempt to enter upon the land of her father outside of the right of way, no matter what her motive in so doing may have been. The defendants had no right to enter upon the Slingerland land outside of the right of way for the purpose of moving the pipes upon the right of way. It would have been a trespass upon the land of Slingerland to have broken down a fence on his land adjacent to the right of way while moving the pipes into position on the right of way for which he could have recovered nominal damages at least. If the daughter was authorized to resist the defendants if they came upon the land of her father, she could use all the force necessary in so doing, and if in exercising this lawful right she was injured by the defendants while they were moving the pipes off the land of her father and while she was where she had a lawful right to be, the defendants must answer for the damages. The fact that she had in mind at the same time a design in exercising this lawful right to hinder or delay the defendants in doing acts which, if they had been done on the right of way, would have been lawful, we think is of no concern. *Gates* v. *Lounsbury,* 20 *Johns.* 427.

One may resist another in a trespass upon his land whatever the motive in so doing may be. It is not the design of the resister but the act of the trespasser which is wrongful. One may consent to a trespass if he will, or he may resist the trespass, whether the motive for so doing be good or bad. The charge of the court therefore, that "if her action there (that is upon the land of her father) was with the intention of preventing the pipes being rolled on the thirty-three-feet strip

she cannot recover unless there was excessive force used," was erroneous.

We understand this charge to be, that if in the rolling of the pipes from off the land of Slingerland on to the thirty-three-feet strip, or right of way, the defendants injured the plaintiff when she was protecting her father's other property and was off the right of way, that she was not entitled to recover if it was her intention in so resisting to prevent the defendants from moving the pipes across her father's property over to and upon the said right of way. We think this was error. We think that she could stand on her father's property where she chose, and if the defendants injured her in moving the pipes while she so stood there, no matter what her motive, they, being trespassers, were liable for the injury done. 28 *Am. & Eng. Encycl. L.* (2d. ed.), tit. *"Trespass,"* 552.

It was suggested that by the pleadings in this case no damage for injuries to the plaintiff could be recovered unless the injury which the plaintiff received was such as had been inflicted upon her while she was upon the right of way, which is described in the pleadings as the *locus in quo* upon which the trespass was committed. Some countenance is given to this contention by the opinion of the Supreme Court reported in *Slingerland* v. *Gillespie,* 38 *Vroom* 385. The case, however, was fully tried without objection, as if the plaintiff would be entitled to recover under the pleadings, whether the injury was done to her on or off the right of way, if the defendants in doing it were trespassers or exceeded their authority or used excessive force, and a new trial should not be refused upon this ground.

We think that the judgment should be reversed and a *venire de novo* issued.

*For affirmance*—None.

*For reversal*—The Chancellor, Dixon, Garrison, Fort, Swayze, Bogert, Voorhees, Vroom, Green. 9.