### ATER v. ELLIS.    (No. 1734.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 5, 1921. Rehearing Denied Jan. 26, 1921.)

1. **Appeal and error ⊕⇒742(5) — Assignment and proposition assailing charge on different grounds than objections made held to present no error.**

Where an assignment of error complained of a paragraph of the charge and the proposition thereunder complained that certain issues were not within the law of the case as shown by objections filed, and the page of the transcript referred to showed more than one objection, but the proposition assailed the issues on entirely different grounds, no error was presented requiring a consideration of the assignment.

2. **Appeal and error ⊕⇒742(2)—Grouping assignments contrary to rules.**

It was a violation of the rules of briefing to copy a number of assignments together fol-

lowed by propositions presented under all but referring to certain specific assignments.

3. **Assault and battery ⊕⇒15—Shooting justified when it appeared that person shot intended to commit theft, burglary, etc.**

Under Pen. Code 1911, art. 1014, specifying when violence does not amount to assault and battery, and article 1105, relative to homicide in preventing murder, burglary, theft, etc., if defendant shot plaintiff for the purpose of preventing theft, burglary, etc., on his premises at night, and it reasonably appeared by plaintiff's acts or words coupled with acts that it was plaintiff's purpose to commit one of such offenses, the shooting was justifiable.

4. **Assault and battery ⊕⇒15 — Shooting of trespasser not justified when purpose to commit offense does not reasonably appear.**

If plaintiff was merely a trespasser on defendant's premises and was not engaged in committing theft, burglary, etc., and his acts and conduct were not such as to make it reasonably appear to defendant that he was there for that purpose, defendant was not justified in shooting him.

5. **Assault and battery ⊕⇒35 — Finding that plaintiff was on defendant's premises at night to commit crime held justified.**

Where plaintiff was on defendant's premises after 11 at night and secreted himself in a hedge and by stealth approached within a few feet of a window of defendant's residence trying to obtain a view therein, and when asked what he was doing by defendant made no reply, but rose up in such a way that defendant feared bodily injury, the jury were warranted in finding that his purpose was theft, burglary, etc.

6. **Assault and battery ⊕⇒15—When conduct indicated purpose to commit theft, etc., resort to other means of prevention before shooting not required.**

Where plaintiff's conduct on defendant's premises after 11 at night indicated that he was there for the purpose of committing theft, burglary, etc., and he was shot by defendant, Pen. Code 1911, art. 1107, providing that homicide is justifiable in the protection of person or property against unlawful and violent attacks other than those mentioned in the preceding article, but that all other means must be resorted to for the prevention of the injury, did not apply.

7. **Evidence ⊕⇒314(5) — What plaintiff had heard from others inadmissible to show reason for being on defendant's premises.**

Where plaintiff, who was concealed on defendant's premises at night and was shot by defendant, was permitted to state his reason for being there, evidence as to what he had heard from third persons concerning the conduct of members of defendant's family when retiring was properly excluded as hearsay.

8. **Trial ⊕⇒351(2)—Special issues properly refused when requested with others not correct or covered by those submitted.**

There was no error in refusing special issues where they were requested and written on a single piece of paper with a number of other

issues, some of which were not correct or were covered by those submitted by the general charge.

## On Motion for Rehearing.

**9. Assault and battery ☞42—Facts held sufficient to raise question of reasonable apprehension.**

Evidence that plaintiff secreted himself on defendant's premises after 11 at night, and when asked what he was doing made no reply, but rose up in such a way that defendant said he feared bodily injury, was sufficient to raise the question of whether defendant had reasonable apprehension of the commission of an offense when he shot plaintiff.

Appeal from District Court, Lubbock County; H. C. Randolph, Special Judge.

Action by George Ater, by A. B. Ater, his father, as next friend, against Temple Ellis. From a judgment for defendant, plaintiff appeals. Affirmed.

M. Fulton, of Lubbock, for appellant.
W. H. Bledsoe, of Lubbock, for appellee.

HUFF, C. J. The appellant, George Ater, by his father as next friend, sued appellee, Temple Ellis, for damages actual and punitory aggregating the sum of $50,000, for personal injuries alleged to have been received from a gunshot wound, inflicted by appellant, wrongfully, willfully and maliciously. The appellee answered by general denial and contributory negligence, and set up the following:

"That on the night of July 29, 1918, plaintiff and his said family were at their home in said city; that between the hours of 11 o'clock p. m. and 12 M. on said date, this defendant's minor daughter came into the house, where this defendant then was, and told this defendant that there was a man secreted or hiding behind a hedge immediately north of their said home, and in the yard thereto; that upon receiving said information, and believing same to be true, this defendant went into the yard of his said home and there found what he took to be a man stooping near to a window in defendant's said home and looking into said window, and so conducting himself as to cause this defendant to believe that the said person was there for an unlawful purpose and was then about to make an attempt to kill or do some serious bodily injury to this defendant, or to some other member of defendant's family, then in said house, or was about to break and enter into said private residence at said hour of night, for the purpose of unlawfully burglarizing same, or to burn said residence, or to make an assault to commit rape on some one of the female members of defendant's said family, then in said private residence, and so believing this defendant called on said party at said window to give an account of his intentions in being in said position in the nighttime, and that said party then arose from said stooping position; and, believing that it was the intention of said party to do this defendant some serious bodily injury, this defendant then and there fired at said party and in so doing was in the exercise of his lawful rights in protecting his said home, his family, and his person from the unlawful violence then about to be done to them or to some one of them by said party; that in shooting at said party he used no greater degree of violence than he believed to be necessary to protect his said home, his said family, and the members thereof, as well as himself, from the unlawful violence that he then believed was about to be done to them by said party. The defendant was so induced to believe that said act upon his part was necessary by the conduct of said party so on his said premises at said time and hour of the night, without the permission or consent of this defendant. That after shooting at said party in his said yard to his said home, this defendant ascertained that he had shot this plaintiff, George Ater, and that the said George Ater was the party so unlawfully on this defendant's said home premises at said time; that, at the time of shooting said plaintiff, this defendant did not know that he was shooting said plaintiff, but believed that he was then shooting at a man of mature years; that said occurrence took place in the nighttime and when it was very dark, and this defendant could not see what he took to be the bulk of a man at the window of his said home, and at said time did not bear any ill will or malice towards him, but at said time shot the said George Ater, as he then believed, in the lawful exercise of his rights to protect his home, his family, and himself, against any unlawful violence then about to be done to his said home, his family, or himself."

It is also alleged that appellant was on the premises of appellee unlawfully in the nighttime, without the consent of appellee, and but for the unlawful conduct of the appellant in entering upon the home premises of appellee he would not have received such injuries. The facts show substantially that at the time of the shooting appellant was a boy about 14 years and 4 months old, weighing about 118 pounds and a man in height. He testified, while on the stand, that on the night of his injury he went to the home of appellee to see for himself if the shades of appellee's house were up all the time; that he first stopped about 20 feet north of the hedge on the north side of appellee's residence; that he went from there to the hedge directly north of the house and knelt down for probably two minutes; and that he heard some one stepping on the sidewalk back north of the house, and he walked back to the sidewalk and started north and met Mr. Ellis' daughter and her young lady friend; he lived one mile northwest of the public square in Lubbock, and appellee lived about four blocks or something like one-half mile southeast of the square; he had no business at appellee's house that night; somewhere between ten and 11 o'clock he went up to Mr. Ellis' home, but did not speak to anybody there. He turn-

ed into the premises of Mr. Ellis and went to the hedge immediately north of the house; after standing there some little while, he went back north of the hedge and there knelt down; that during the time he was at the hedge and kneeling down he was trying to look in the house under the curtain; that after he returned to the sidewalk he walked back down the sidewalk and again entered upon the premises of appellee and was there accosted by appellee and shot. Miss Opal Ellis testified substantially that on the night of the shooting she and her friend, Ruth Hussey, had been to town, and when they returned home they saw a man crouching by the hedge north of the house, and that she and her friend went into the house and notified her father of the fact. Appellee testified, after he was notified that there was a man in his hedge north of his residence, he went out the back door of his residence, and, not finding a man in the hedge, he went to the northeast corner of the residence, from which position he saw some one inside his yard and on his premises; that this party was stooping down and looking in through the window; that at the time he had no idea who it was, but believed from the fact that this party had been concealed in the hedge and was then in front of his residence, and in his yard, about five or six feet from or immediately east of the gallery; that when he saw this party crouching in front of his window he called to him and believed the party was there for the purpose of doing some injury, either to appellee, his house, or some member of his family; that he shot at him three times; that he was not prompted in so doing by any malice or ill will towards the plaintiff, but was simply exercising his right to protect himself, his family, or his home from such danger as he saw threatened by the appellant. The appellee further states in substance that when he accosted the appellant that he jumped to his feet, and that he believed him to be a grown man and that he was then about to receive serious bodily injury from appellant and that thereupon he fired.

The facts show that there were three shots fired in rapid succession, and that the pistol was a double-action one, that could be fired by simply pulling the trigger. The fourth shot was fired, but appellee says he fired that into the air. Appellee also stated that when he accosted appellant he asked him what he was doing there and that he received no reply. The jury found in answer to special issues: (1) That it reasonably appeared to Ellis that Ater had entered upon the home premises of Ellis at nighttime for the purpose of committing some one of the named offenses, of burglary, arson, rape, theft, or murder; (2) that the acts and conduct of Ater did cause Ellis to have reasonable apprehension of danger to himself, his home, or family, at the hands of Ater; (3) that Ellis, at the time of the shooting, did exercise all due and proper care and caution after discovering the presence of Ater upon his premises before shooting him; (4) that Ater was upon the premises of Ellis in the nighttime, then and there secreting himself at the time he was shot; (5) that he was on the premises at the time the shot was fired that wounded him. Judgment was rendered for Ellis upon these findings.

The first, second, and third assignments of error are to the effect that the trial court erred in overruling certain exceptions to the petition, which are to the effect that the answer does not allege specifically acts or words showing that the shooting was in defense of his person, his family, or his home, and in admitting evidence to prove the acts or words of Ater while on the premises of Ellis, because there had been pleaded no such acts or words reasonably calculated to produce apprehension of danger to Ellis.

[1, 2] Assignment 3a does not point out the charge objected to with such degree of certainty as will require its consideration, and does not appear to be such as can be considered with the other assignments above mentioned, and, in addition, the assignment complains of the general charge, paragraph 2. There is a proposition under these assignments which complains that issues 1 and 2 were not within the law of the case, as shown by the objections filed. The brief does not point out which objection or what objection is referred to, but simply gives the page of the transcript. An examination of the transcript on that page reveals the fact that there was more than one objection to paragraph 2 and issues 1 and 2. We find an objection to paragraph 2 of the general charge, which charge seeks to define the rights of the defendant in protecting his premises, and the extent to which he may go in preventing theft, murder, arson, burglary, or rape in the nighttime. This charge appears to be the charge upon which the assignment is based, but the proposition assails issues 1 and 2 on entirely different grounds, as that the evidence is not sufficient to warrant their submission. Manifestly, the brief presents no such error as will require a consideration of assignment 3a. In fact, the brief violates the rules for briefing. All the assignments are copied together, and then propositions are presented under all; but the propositions do refer to certain specific assignments as copied, as above suggested. This renders a consideration of the errors, if any, sought to be presented, quite inconvenient. Counsel, in briefing a case, should follow the rules, whether they appeal to him as logical or not. We have, however, concluded that we should consider whether the answer and the evidence thereunder present a defense to the cause of action set up by appellant.

[3-5] It may be true a defendant would not be relieved from liability for damages, even though under the facts he would not have been guilty of a criminal offense, such as assault to murder, aggravated assault, or simple assault. Chapman v. Hargrave, 204 S. W. 379. But it seems the law will give a party the right to protect himself from danger or apparent danger, or his right to prevent theft, burglary, etc., on his premises at night even to taking life, and that he would only be required to exercise due caution before shooting to prevent the offense in order to relieve himself from civil liability. If the appellee shot the appellant for the purpose of preventing any of the named offenses at night, this would be justified, if it reasonably appeared by the acts or by words, coupled with acts, of the appellant, that it was the purpose or intent of appellant to commit one of the offenses named. The killing or injury must take place while the person killed was in the act of committing the offense or after some act done by him showing evidently an intent to commit such offense. Article 1105, Penal Code, and article 1014. If the appellant was merely a trespasser on the premises, and at the time he was shot he was not engaged in committing theft or any of the offenses named, and his acts and conduct were not such at the time as to make it reasonably appear to appellee that appellant was there for that purpose, the injury would not under such circumstances be justified. The jury, however, in this case, have resolved these questions in favor of the appellee, and we think the pleadings set up such acts and conduct on the part of the appellant and which are sustained by the evidence as will support the findings of the jury. The great weight of the testimony shows that appellant was at the home of appellee in the nighttime and after 11 o'clock. He secreted himself in the hedge and by stealth approached within five or six feet of the window of appellee's residence, trying to obtain a view therein. He was asked what he was doing there, but made no reply, and when challenged rose up in such way that appellee says he feared bodily injury. Certainly these acts indicate an unlawful purpose and very naturally indicate that his then purpose was theft, burglary, rape, or murder. The jury were warranted in finding this was his purpose. Appellant admits an unlawful trespass, but does not admit a purpose to commit one of the crimes named in the statute as grounds justifying homicide. He should not complain if the appellee did not know his real purpose. He was called on to state why he was there, but remained silent. His conduct was such at the time as to charge him with the attempt to commit a crime or to commit one which the law authorizes the owner to kill to prevent and terms justifiable homicide.

227 S.W.—15

"We are also of the opinion that, in a proper case, the rule of law just stated will justify the homicide of one who in the nighttime unlawfully invades or trespasses upon the premises of another, with no purpose or intention to steal, but whose conduct is of such a character as to make it reasonably appear to one exercising proper care and caution that such was his intention." Grant v. Hass, 31 Tex. Civ. App. 694, 75 S. W. 345.

[6] In this case the jury found Ellis did exercise due care and caution. The facts were properly submitted to the jury, and we think the pleadings and evidence would warrant the jury in finding that from the acts then done they were such as to cause Ellis to have reasonable apprehension to himself or that one or the other of the offenses named would be committed if not then prevented. Slack v. State (Cr. App.) 149 S. W. 707; Whitten v. State, 29 Tex. App. 504, 16 S. W. 296; Railway Co. v. Pettit, 47 Tex. Civ. App. 354, 105 S. W. 42; Railway Co. v. Jopes, 142 U. S. 18, 12 Sup. Ct. 109, 35 L. Ed. 919; March v. Walker, 48 Tex. 372; Railway Co. v. Huddleston, 178 S. W. 704; 5 C. J. "Assault," p. 632, note 48 (d); Slingerland v. Gillespie, 70 N. J. Law, 720, 59 Atl. 162, 1 Ann. Cas. 886. In the character of defense pleaded in this case it is not, as we understand, such as will fall under article 1107 of the Penal Code; that is, that the defendant must resort to all other means of prevention before killing.

[7] The appellant also presents the proposition that the court was in error in excluding the testimony of the appellee, to the effect that he had heard that the young ladies residing with appellee were in the habit of undressing in their rooms with the window shades up and light in the room and exposing their bodies to persons passing the place and that he went there to see for himself if such reports were true; that he did not go there to commit any offense or to do anything he had no right to do. The appellee objected to the testimony offered as to what the witness had heard about such matters, as prompting him to be at appellee's residence. The trial court sustained the objection. The witness did state that he went there for no unlawful purpose or to steal anything. He stated his purpose in going to the house was to see for himself if the window shades of Mr. Ellis' home were up all the time, and he admits that he was looking under the shades while there and saw one of Mr. Ellis' daughters in her nightgown and that there was a light in the room. We think the testimony which was admitted sufficiently stated his purpose in visiting the premises. There was no error in excluding what others had told the witness with reference to the window shades, light, and manner in which the young ladies retired. Under the findings of the jury, the exclusion of the

testimony, if admissible, would have been immaterial. The jury found that appellee exercised due precaution before he shot, and there is no pretense that appellee then knew of appellant's purpose in visiting his home. Appellee was acting on the facts as they then appeared to him at the time. We, however, think under no view of the case was the hearsay statement offered admissible.

[8] The sixth assignment complains of the failure of the court to give requested special issues 1, 3, and 4. Nos. 3 and 4 are substantially covered by issues submitted by the court. No. 1, as requested, we think not applicable to the facts as made by the pleadings. We regard the issues submitted by the trial court as being applicable to the facts and pleadings. The trial court, however, committed no error in refusing these issues for the further reason they were requested and written on one piece of paper together with a number of other issues and made all in one request. Some of the issues requested were not correct; some were covered by the issues submitted by the court's general charge. The court was not required to pick out the issues from among the other issues requested and determine which of the several issues should be given. If appellant desired a special issue given he should have requested it separately.

There is no reversible error assigned, and the case will be affirmed.

### On Motion for Rehearing.

[9] The facts set out by us are supported by the evidence in the record and, as we conceive the matter, support the findings of the jury. There is doubtless evidence which would have authorized the jury in finding that Ellis was not in immediate or imminent danger of serious bodily injury to himself; or that there was no reasonable ground to fear the commission of any of the named offenses on his premises at nighttime, but the jury saw proper to accept the appellee's testimony as reflecting the appearance to him at the time and reasonable apprehension therefrom. We regarded the facts showing that appellant was on the premises at nighttime, and his movements thereon at the time, as sufficient to raise the question of reasonable apprehension.

The assignments presented by appellant challenge the evidence as a matter of law in not being sufficient to support the jury's findings. We do not believe we were authorized in so finding. There is some complaint by appellant as to our action in considering his brief. We may say at this time that the appellee strenuously insisted on the original hearing that we should not consider the brief as presented in this court, and we feel that we have given the appellant the benefit of a liberal ruling in the consideration of the questions discussed by us and that he should have no just ground for complaint at our action in that particular. Appellant seems to have entertained the view that we disapprove of his suit on the ground stated in his petition. We suggest that he is under a misapprehension of our views with reference to the case, and we certainly recognize his right to appeal to the courts to ascertain whether he had an action or not, whatever may have been the occasion which brought about the unfortunate shooting.

We are of the opinion that the case was properly tried in the court below and that the judgment should be affirmed.

The motion will be overruled.