Kay Morris **HOWSLEY** and James A. Howsley, **Individually and as Administrator of the Estate of Robert C. Howsley, Deceased,** Appellants,

v.

Harvey **GILLIAM,** Appellee.

No. 6352.

Court of Civil Appeals of Texas, El Paso.

Dec. 19, 1973.

Rehearing Denied Jan. 16, 1974.

Weldon & Smith, Inc., Gerald J. Smith, El Paso, for appellants.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, Perry Davis, Jr., Odessa, for appellee.

## OPINION

OSBORN, Justice.

This is a suit for wrongful death, brought by the surviving parents and the Estate of Robert C. Howsley, Deceased, who was shot and killed while removing a battery from the Appellee's automobile. The trial Court granted a summary judgment denying recovery and that judgment is affirmed.

The motion for summary judgment alleges that on October 26, 1971, at approximately 11:00 o'clock P.M., Robert C. Howsley was engaged in stealing a battery from the Appellee's car which was parked in front of his residence in Alpine, and that Appellee fired a shot from an upstairs room of his house, and the 22 caliber bullet struck Robert C. Howsley in the head and killed him. The motion further contends that the homicide was justifiable under the provisions of Article 1222, Tex. Penal Code Ann., and therefore there could be no recovery of damages based upon the theory of intentional killing or negligence.

The deposition of Harlan Gilliam, Appellee's minor son, established that on the evening of October 26, 1971, he heard a noise in the front yard and looked out his window and saw someone attempting to open the hood of his father's car. He reported this to his father who at the time was preparing to go to bed. The deposition of the Appellee indicated that on that evening he had started to bed and obtained a book to read when his son reported to him that there was somebody under the hood of the car. He then described what happened, as follows:

"The hood was open. I could see a shadow climbing up in the—sort of almost over the motor, making quite a bit of noise. I told my wife who came upstairs with us to go back and call the police. She went downstairs to call the police and we watched what was going on out in front. It was real dark and the only thing I could see was it was the figure of a person. I could see his dark hat and dark boots or dark shoes. In the darkness, these two even darker things stood out. This person would get up under the hood and hammer around with some tools, get out and go on the far side of the car and disappear from view completely, mumbling and talking which led me to believe there was somebody over there on the other side. I never did see anyone on the other side but this is what I thought, and he came back and got back under the hood again. Did this, like I say, three or four times, hammering, and then getting out and walking around the car. Didn't seem to be trying to be quiet about it at all.

We watched him, my wife came back up and said she had called the police and so I just watched him figured the police would be there in a few minutes. About that time he lifted the battery out and set it down in front of the car. I could tell it was the battery because it came from about where the battery was and it was sort of heavy and I was hearing some grunting and groaning and then he slammed the hood down and I figured he was fixing to take off and so I decided to shoot a warning shot at his feet and tell him to hold up and as I did, evidently he leaned over to pick up the battery at that time and I heard the bullet hit and he fell over."

Concerning his intent at the time, Dr. Gilliam said:

"Q Did you say anything to him before you fired the shot?

A To the boy outside?

Q Yes, sir.

A No. I didn't.

Q Why not?

A Well, I was afraid he would run away. I thought that if I fired at his feet and then said something that he would know that I had a gun and he would probably stay

there until the police came. If I just yelled, I didn't know whether he had a gun or not and throw a shot my way or not and run off. I wanted the police to get there before he left the scene.

Q   Why is that?

A   Well, because he was stealing something and I wanted the police to pick him up."

The Deputy Sheriff who investigated the incident identified pictures taken at the scene which showed the battery on the ground beside the car. In lieu of taking his deposition, the attorneys of record signed a stipulation concerning the testimony of Eugene Stoudt, the college roommate of Robert C. Howsley, and such stipulation provides, as follows:

"If EUGENE STOUDT were called as a witness in this cause, he would testify that on October 26, 1971, at approximately 11:00 P.M., he and ROBERT C. HOWSLEY intended to steal a battery from the car of DR. HARVEY GILLIAM; that DR. GILLIAM'S car was parked outside of his residence in Alpine, Texas, at such time; that EUGENE STOUDT left ROBERT HOWSLEY in front of DR. GILLIAM'S house; that EUGENE STOUDT went to a gas station to obtain gas in his automobile; and that when he returned to DR. GILLIAM'S residence, he discovered that ROBERT HOWSLEY had been shot."

Mr. and Mrs. Howsley in their depositions identified Eugene Stoudt as their son's roommate and said he had told them that he and their son were attempting to take a battery from a car in Alpine at the time of the shooting.

Article 1222, Tex. Penal Code Ann., provides that homicide is justifiable when inflicted for the purpose of preventing, among other offenses, theft at night provided it reasonably appears by the acts or by words coupled with acts of the person killed that it was the purpose and intent of such person to commit said offense, and provided the killing must take place while the person killed was in the act of committing the offense and in the case of theft by night the homicide is justifiable at any time while the offender is at the place where the theft is committed, or is within reach of gunshot from such place. Based upon this statute and the proof set forth herein, the trial Court granted a summary judgment for the Appellee.

The Appellants, in four points of error, contend the judgment of the trial Court is erroneous. First, it is contended that the trial Court erred in considering the stipulation as to the testimony of Eugene Stoudt. Appellants urge that the stipulation was not made for the purpose of being used in deciding a motion for summary judgment and that it does not come within the provisions of Rule 166–A(c), Texas Rules of Civil Procedure, which provides that judgment shall be rendered forthwith if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," show that there is no genuine issue as to any material fact.

■  The stipulation was reduced to writing, signed by the attorneys of record and filed with the papers as part of the record. Thus it meets all the requirements of Rule 11, Tex.R.Civ.P. Admittedly, it was made to avoid having to take the witness' deposition and without restriction as to its use during any part of the proceedings in this case. Thus it was entitled to be considered by the Court in the absence of the witness. Southwestern Gas & Electric Co. v. Anderson, 217 S.W.2d 47 (Tex. Civ.App.—Amarillo 1948, no writ).

In Austin Building Company v. National Union Fire Insurance Company, 432 S.W.2d 697 (Tex.Sup.1968), the Court concluded that a statement of facts from a prior trial could be used in support of a motion for summary judgment, even though it was neither a pleading, deposition, affidavit or admission. The trial Court properly considered the stipulation and the first point of error is overruled.

The Appellants next contend that the trial Court erred in finding that it was established as a matter of law that the deceased was engaged in the act of stealing a battery at the time he was shot and killed, and that Appellee was entitled to the benefit of Article 1222, as a matter of law. Article 1222 provides in part that a homicide is justified when inflicted for the purpose of preventing theft at night, when it reasonably appears from the acts of the person killed that it was the purpose and intent of such person to commit the offense, and the killing takes place while the person killed was in the act of committing the offense, and it must take place before the offense is actually committed or while the offender is at the place where the theft is committed, or is within gunshot reach from such place.

Appellants argue that the summary judgment proof does not establish as a matter of law that the deceased intended to steal the battery and suggest that at the crucial moment he was shot he may have changed his mind and decided to return the battery, although there is no evidence in the record to so indicate. We conclude that such theory is not material to our determination of the case. In applying Article 1222, the trial Court was required to determine whether from the standpoint of the Appellee, the summary judgment proof established as a matter of law that it reasonably appeared from the acts of Robert C. Howsley that it was his purpose and intent to commit theft at night, and that the killing took place while the deceased was in the act of committing such offense and while he was within gunshot reach of the place where the offense occurred.

In Ater v. Ellis, 227 S.W. 222 (Tex.Civ. App.—Amarillo 1921, writ dism'd), suit was brought to recover damages sustained when a fourteen year old boy was shot while in the defendant's yard at night, apparently for the purpose of confirming reports he had heard that young ladies in the house were in the habit of undressing in their rooms with the shades up and the lights on. The appellate Court noted that

under the justifiable homicide statute the issue is not whether an offense was being committed by the one shot, but whether it reasonably appeared to the one doing the shooting that the offender was present for the purpose of committing one of the offenses named in the statute.

This same statute was considered by the Court in Grant v. Hass, 31 Tex.Civ.App. 688, 75 S.W. 342 (1903, no writ). In that case, the plaintiff recovered damages when shot by a spring gun while in the defendant's melon patch. The Court properly concluded that the statute was not applicable to the facts of the case but in considering its effect said:

"If the plaintiff had entered the premises at night with the purpose and intention of stealing the melons and his conduct had been of such a character as to make it reasonably appear that such was his purpose, his killing would have been justifiable. The killing must take place while the offender is in the act of committing the offense, or after some act done by him showing an intention to commit the offense, or, if the theft is completed, the killing must occur within gunshot distance of the place where the theft was committed. We are also of the opinion that, in a proper case, the rule of law just stated will justify the homicide of one who in the nighttime unlawfully invades or trespasses upon the premises of another, with no purpose or intention to steal, but whose conduct is of such a character as to make it reasonably appear to one exercising proper care and caution that such was his intention. The apprehension upon the part of the slayer must be reasonable—not merely conjectural, such as might arise from the mere presence of the intruder, but must be predicated upon some act upon the part of the deceased of a nature calculated to arouse in the mind of one of ordinary prudence and caution that a theft is about to be committed."

■ Applying summary judgment rules as set forth in Great American Reserve In-

**632**

surance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex. Sup.1965), the evidence established as a matter of law that at the time of the killing it reasonably appeared to the Appellee from the acts of Robert C. Howsley that it was his purpose and intent to commit theft at night, and certainly he was shot while he was in the act of committing the offense, and within reach of a gunshot from the place where the offense occurred.

 Immediately prior to the shooting, Appellee's son had reported to him that there was somebody under the hood of the car. He looked out the window himself and could see the figure of a person. He saw this person under the hood and heard him hammer around with some tools. He then saw the battery being lifted out and set down in front of the car. There is no proof to the contrary, and while we recognize that this evidence comes from an interested witness it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach it. Therefore, the trial Court quite properly concluded that the defense of justifiable homicide was established as a matter of law. This defense, where established, precludes the recovery of damages under the wrongful death statute. McMurrey Corporation v. Yawn, 143 S.W.2d 664 (Tex.Civ. App.—Texarkana 1940, writ ref'd). The Appellants' second point is overruled.

 The Appellants next contend that if an offense was committed it was breaking and entering a vehicle under Article 1404b, Tex. Penal Code Ann., and in such instance the killing would not be justified under Article 1222. This point cannot be sustained since theft at night and breaking and entering a vehicle are separate and distinct offenses and the proof of one would not necessarily suffice to establish the other. Had the deceased not been killed, he apparently could have been charged with either theft or breaking and entry of an automobile or both, since they are separate and distinct offenses. The third point is overruled.

 Finally, the Appellants contend that the trial Court erred in its technical and liberal application of Article 1222 to this factual situation so as to justify the killing and prevent a recovery of damages. We readily recognize the harshness of the results where the statute is applied. Nevertheless, the Courts are required to give full effect to the laws passed by the Legislature. Over fifty years ago, the Courts of this State recognized the defense of justifiable homicide and applied the rule even in a case when one killed another for stealing whiskey while they were engaged in gambling. Surges v. State, 88 Tex.Crim. 288, 225 S.W. 1103 (1920). A similar provision of the law has been enacted into the new Texas Penal Code, Section 9.42. Therefore the trial Court was compelled to recognize the Appellee's rights under the statute and give application to the defense raised by the motion for summary judgment, and established by the supporting proof, harsh as the results might be. The fourth point is overruled.

The judgment of the trial Court is affirmed.