Kay Morris **HOWSLEY** et al., Petitioners,

v.

Harvey **GILLIAM**, Respondent.

No. B–4490.

Supreme Court of Texas.

Jan. 8, 1975.

Weldon & Smith, Inc., P. C., Gerald J. Smith, El Paso, for petitioners.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, Inc., Perry Davis, Jr., Odessa, for respondent.

SAM D. JOHNSON, Justice.

This is a suit for wrongful death brought by the surviving parents and the estate of Robert C. Howsley, who was shot and killed while removing a battery from respondent Dr. Harvey Gilliam's automobile. The trial court granted summary judgment for Gilliam and the court of civil appeals affirmed. 503 S.W.2d 628. We reverse.

It is undisputed that on October 26, 1971 at approximately 11:00 p. m. Robert Howsley, who was eighteen years of age, was engaged in attempting to steal a battery from Dr. Gilliam's car. The car was parked in the driveway of Dr. Gilliam's home. Harlan Gilliam, Dr. Gilliam's minor son, heard a noise in the front yard, looked out and saw someone attempting to open the hood of his father's car. He informed his father of what he had seen. Dr. Gilliam obtained a .22 rifle from a closet and went upstairs to his son's room to observe from a window. Dr. Gilliam's position at the window was approximately thirty feet from the event he was observing.

Though it was dark, Dr. Gilliam was able to perceive the shadowy figure of a person bent over the engine compartment of his automobile. He saw this person lift the battery out of the car, set it down in front of the car, and close the hood. At this time Dr. Gilliam decided to fire a warning shot at the intruder's feet in order to apprehend him and to keep him from running away. The rifle shot, however, which traveled the approximate thirty-foot distance, struck Howsley in the head, killing him instantly.

The trial court granted summary judgment for defendant Gilliam on the ground that Article 1222, Vernon's Texas Penal Code Annotated (hereinafter cited as Article 1222), exonerated Gilliam as a matter of law for civil liability for the shooting. The court of civil appeals affirmed, holding that establishment of the defense of justifiable homicide under Article 1222 precluded the recovery of damages under the wrongful death statute. Article 1222 provided:

"Homicide is justifiable when inflicted for the purpose of preventing murder, rape, robbery, maiming, disfiguring, castration, arson, burglary and *theft at night,* or when inflicted upon a person or persons who are found armed with deadly weapons and in disguise in the night time on premises not his or their own, whether the homicide be committed by the party about to be injured or by another in his behalf, when the killing takes place under the following circumstances:

" . . . .

"8. In cases of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building or at the place where the theft is committed, or is within reach of gunshot from such place or building." [Emphasis added.]

The issue presented to this court is whether Article 1222 provides, in a civil case, exoneration as a matter of law for a killing which we assume would otherwise be actionable. We hold it does not.

◼ It is well established that the mere fact the Legislature adopts a criminal statute does not mean this court must accept it as a standard for civil liability. Parrott v. Garcia, 436 S.W.2d 897, 899 (Tex.1969); Rudes v. Gottschalk, 159 Tex. 552, 324 S.W.2d 201 (1959). *See* 2 Harper & James, The Law of Torts §§ 17.5, 17.6 (1956); Restatement (Second) of Torts §§ 286–288B (1965); Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317 (1913); Morris, The Role of Criminal Statutes in Negligence Actions, 49 Colum. L.Rev. 21 (1949). In Rudes v. Gottschalk, *supra,* Justice Norvell explained the discretion of the court:

"Fundamentally, however, the application of proscriptions contained in criminal statutes as standards for determining

tort liability stems from the judicial action of civil courts. The statute here does not expressly provide for the fixing of civil liability in a negligence action. Actions expressly provided for by statute are to be distinguished from actions based upon the doctrine of negligence per se. In the latter type of action, the civil courts may and often do consider acts or omissions as negligent because of criminal regulations against them, although such acts or omissions would not be considered negligent under the ordinarily prudent man test. In the usual negligence per se case, however, we are concerned with alleged conduct which would be considered substandard even in the absence of statute. We adopt the statutory test rather than that of the ordinarily prudent man as the more accurate one to determine negligence because the Legislature, by reason of its organization and investigating processes, is generally in a better position to establish such tests than are the judicial tribunals. But this does not mean that the criminal statute is always accepted as a test of negligence by the civil courts under all circumstances. We have applied tests and standards taken from criminal statutes, even though such provisions are too indefinite for criminal proscriptions, Gann v. Keith, 151 Tex. 626, 253 S.W.2d 413, and even when the statute may be wholly invalid as a criminal regulation because of a failure to comply with a procedural condition precedent. Clinkscales v. Carver, 22 Cal.2d 72, 136 P.2d 777.

"As the power of adopting or rejecting standards rests with the civil courts, we may accept or reject the criminal statute or use such part thereof as may be deemed appropriate for our purposes. Phoenix Refining Co. v. Powell, Tex. Civ.App., 251 S.W.2d 892, wr. ref. n. r. e.; . . ." 324 S.W.2d 201 at 204, 205.

■ Article 1222 establishes the minimum standard of conduct necessary to relieve one from the burden of criminal prosecution. The statute's purpose is to delineate the exceptional circumstances under which an individual who would otherwise be guilty of criminal homicide is exonerated. If an individual establishes that he is within the ambit of the protection afforded by the statute, he is not, in essence, a wrongdoer under the criminal law.

■ In the instant case the court of civil appeals apparently adopted the reasoning underlying the theory of negligence per se to arrive at the conclusion that Article 1222 precluded civil liability. Under the negligence per se doctrine, civil law will not condone behavior which does not at least meet the minimum standard for behavior set by penal statutes. Violation of a penal statute will thus result in civil liability as a matter of law. *E. g.,* Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S. W.2d 609 (1950); Rial v. Curtis, 274 S. W.2d 117 (Tex.Civ.App.—Galveston 1954, writ ref'd n. r. e.). However, it is well established that civil law can require a higher standard of behavior than that established by the criminal law. *See, e. g.,* Prosser, Handbook of the Law of Torts 203, 204 (4th Ed. 1971); Morris, The Role of Criminal Statutes in Negligence Actions, *supra* at 43. Thus, proof that an individual did not violate any penal law would not necessarily preclude civil liability. It follows that simply because one may be statutorily relieved from criminal prosecution does not mean he will be universally exonerated from civil liability when his conduct falls below the minimum standard applicable to the civil law. This has now been expressly recognized by the Legislature by its enactment of Section 9.06 of the Penal Code, Vernon's Texas Codes Annotated:

"The fact that conduct is justified under this chapter does not abolish or impair

any remedy for the conduct that is available in a civil suit." [1]

Dr. Gilliam argues that in any event it is conclusively established in this state that the killing of an individual engaged in theft at night is not actionable as a matter of law. In support of his contention respondent relies upon a series of cases, the first of which is March v. Walker, 48 Tex. 372 (1877). In *March* suit was instituted by the minor children of the deceased to recover damages for the alleged willful and malicious killing of their father. The defendants alleged that they were acting in self-defense, and that the killing was therefore justifiable homicide. The *March* court reversed the judgment of the trial court, holding that the plaintiffs had failed to show a wrongful killing since it was done in the justifiable exercise of the right of self-defense. The holding of the court was thus grounded upon the fact that self-defense was conclusively established. In McMurrey Corporation v. Yawn, 143 S. W.2d 664 (Tex.Civ.App.—Texarkana 1940, writ ref'd), the element of self-defense was also present and was likewise considered controlling. In that case there was evidence that the plaintiff's decedent had threatened to kill the defendant several times before the final confrontation, and that on the night of the killing he attempted to carry out his prior threats. The court held that if the defendant was acting in his own self-defense at the time he shot and killed the deceased, the killing would not be wrongful. In other words, if the jury could find that it reasonably appeared to the defendant that he was in danger of death or serious bodily injury, he had the right to defend himself with deadly force. The holding specifically related to the establishment of justification by reason of self-defense, and the court pointed out that the law of self-defense is the same in a criminal prosecution as it is in a civil prosecution. *See also* Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943) and Bradford v. Fort Worth Transit Company, 450 S.W.2d 919 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.), both of which involved self-defense and in which the courts held that the law of self-defense is the same in both civil and criminal cases.

None of the cases cited involved allegations that the justification provisions of the Penal Code precluded civil liability. There are, however, two cases which have ostensibly applied the justification articles of the Penal Code to instances similar to the instant case, Ater v. Ellis, 227 S.W. 222 (Tex.Civ.App.—Amarillo 1921, writ dism'd) and Redmon v. Caple, 159 S.W.2d 210 (Tex.Civ.App.—Texarkana 1942, writ ref'd w. o. m.). In Ater v. Ellis, *supra,* the plaintiff, a fourteen-year-old boy, was shot while in the defendant's yard at night, apparently for the purpose of confirming reports he had heard that young ladies in the house could be seen undressing in front of an unshaded window. The boy had

---

1. Article 1222 itself has now been succeeded by Texas Penal Code, Section 9.42, V.T.C.A., which provides:
"A person is justified in using deadly force against another to protect land or tangible, movable property:
"(1) if he would be justified in using force against the other under Section 9.41 of this code; and
"(2) when and to the degree he reasonably believes the deadly force is immediately necessary:
  "(A) to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or
"(B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and
"(3) he reasonably believes that:
  "(A) the land or property cannot be protected or recovered by any other means; or
  "(B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury."

been hiding in a hedge in the defendant's yard, and the defendant testified that when he accosted what he thought was a "man" hiding in the shrubbery the boy jumped to his feet and approached the defendant menacingly. In fear for his life, the defendant shot the boy. The jury found that the defendant reasonably feared danger to himself, his home and family, and that he exercised due care after discovering the boy. The court, referring to the predecessor statute to Article 1222, stated:

"It may be true a defendant would not be relieved from liability for damages, even though under the facts he would not have been guilty of a criminal offense, such as assault to murder, aggravated assault, or simple assault. Chapman v. Hargrove [Tex.Civ.App.], 204 S.W. 379. But it seems the law will give a party the right to protect himself from danger or apparent danger, or his right to prevent theft, burglary, etc., on his premises at night even to taking life, and that he would only be required to exercise due caution before shooting to prevent the offense in order to relieve himself from civil liability. If the appellee shot the appellant for the purpose of preventing any of the named offenses at night, this would be justified, if it reasonably appeared by the acts or by words, coupled with acts, of the appellant, that it was the purpose or intent of appellant to commit one of the offenses named. The killing or injury must take place while the person killed was in the act of committing the offense or after some act done by him showing evidently an intent to commit such offense." 227 S.W. 222 at 225.

Though it appears in dictum that the court of civil appeals in *Ater* concluded the criminal statute justifying homicide to prevent theft was applicable to civil liability, the actual circumstances involved a fear of bodily harm to the defendant and his family. In addition, the defendant pleaded and obtained favorable jury finding on the issue of self-defense. In the instant case

there was no pleading or finding of self-defense. Moreover, the language quoted from *Ater* states that the defendant is required to exercise due caution before shooting. Such a requirement necessarily entails a fact determination which, in the instant case, would preclude summary judgment.

In Redmon v. Caple, *supra*, Redmon and Caple were involved in an altercation one evening. Later that same evening Redmon and two others came to the house of Caple and demanded admittance. Caple fired a gun at them through the kitchen window and, in escaping, Redmon stumbled into a ditch and sustained leg injuries for which he sued. None of the shots actually hit Redmon. The court held that Article 1142 of the Penal Code, which was quite similar to Article 1222, was applicable. Article 1142 exonerated a defendant from criminal liability if he used violence in preventing an unlawful intrusion upon the possession of his property. The court emphasized that the defendant neither aimed at nor hit either of the plaintiffs. Redmon v. Caple, *supra,* is unlike the instant case in two critical particulars: the defendant's shot did not actually hit the plaintiff and, even more significantly, the element of self-defense was clearly present since the plaintiff at the time of the shooting was attempting to force his way into the defendant's house.

■ None of the courts in the cited cases specifically held that the statute justifying homicide to prevent theft would prevent recovery of damages under the wrongful death statute. Rather, those cases all turned on the fact that self-defense was clearly established. Consequently, those decisions do not require this court to hold that the defendant in the instant case, where there was neither allegation nor proof of self-defense, is exonerated from civil liability.

We hold that in the instant wrongful death action based on negligence, where there are no allegations of self-defense, de-

fense of others, or defense of property, the shield of justifiable homicide provided by Article 1222 confers no exoneration upon Dr. Gilliam.

As the instant case reaches this court, it has been presented solely on grounds of negligence. In his petition the plaintiff has limited his allegations to those of gross and ordinary negligence on the part of Dr. Gilliam. In response, Dr. Gilliam has alleged contributory negligence on the part of Howsley. We have not been presented with, and express no opinion on the applicability of, questions concerning battery, use of reasonable force to protect one's property, assumed risk, discovered peril or other such matters.

The judgment of the court of civil appeals is reversed and the case remanded to the trial court.

McGEE, J., notes his dissent.